**Angus BROWN, et al., Plaintiffs,**

v.

**William WINKLE, et al., Defendants.**

**No. C72–282.**

United States District Court,
N.D. Ohio, W.D.

June 21, 1989.

Randall C. Marshall, Advocates for Basic Legal Equality, Inc., Toledo, Ohio, for plaintiffs.

Robert G. Young, City of Toledo Law Dept., Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge.

In this pending action, the plaintiffs have filed a motion for a permanent injunction prohibiting the use of urinalysis drug screen as a detection device.

Instead of responding directly to this motion, the defendants, using a variant of a method often, and forcibly, disapproved of by this Court, have filed a pleading captioned "Defendant's Motion for Summary Judgment Re Plaintiffs' Request for an Injunction Prohibiting Drug Screening." The plaintiffs have filed a response to the defendants' motion.

However awkwardly the two motions raise the issue, it is obvious that the issue is whether this Court should permit requiring candidates for selection as firefighters to test negative on a drug screen, that is, a urinalysis, in order to be selected for training and employment.

This is by no means so simple a matter as it appears to be on the surface.

The plaintiffs contend that use of a urinalysis drug screen violates an applicant's Fourth Amendment right of privacy. They also argue that such use has not been validated in accordance with the EEOC Uniform Employee Selection Guidelines, as required by this Court's previous orders.

The defendants respond to the first of these arguments by citing the Supreme Court's holding in *National Treasury Employees Union v. Von Raab,* —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (March 21, 1989). In that case, the Court held, in essence, that privacy rights of certain government employees could be outweighed by valid public or governmental interests.

■ Thus stated, the Supreme Court's ruling is not novel. The Fourth Amendment does not confer the so-called "right of privacy," which actually is based upon the Ninth Amendment. What the Fourth Amendment does is to establish the means by which, and the extent to which, privacy may be invaded by the government. The basic test is that an invasion of privacy must be reasonable. The Supreme Court has dealt with the question of reasonableness on a case by case basis. In the *Von Raab* case, the question was the reasonableness of drug testing for government employees involved in drug interdiction or carrying firearms. The Court held it reasonable to require such employees to submit to drug testing.

Before the decision in *Von Raab,* there were a number of cases in the Sixth Circuit holding that random drug testing was an unconstitutional invasion of privacy, including a decision in a case very similar on its facts to the present one, by another judge of this District. See, *Lovvorn v. City of Chattanooga,* 846 F.2d 1539 (6th Cir.1988); *Penny v. Kennedy,* 846 F.2d 1563 (6th Cir. 1988); *Feliciano v. City of Cleveland,* 661 F.Supp. 578 (N.D.Ohio 1987). However, it seems quite clear that the Supreme Court's decision robs these cases of any authority.

The defendants respond to the plaintiffs' arguments about the EEOC Guidelines by referring to a study recently conducted by the United States Postal Service which showed a definite relationship between job performance (absenteeism and involuntary separation from employment) and drug usage detected by screening. Defendants contend that the study satisfies the EEOC Guidelines, and that the Court's expert has not rejected drug screening as a job-related criterion for employment.

■ In their response, the plaintiffs argue that Exhibit B, attached to the defendants' motion, does not comply with Fed.R. Civ.P. 56(a) and should not be considered by the Court.

That paragraph refers to affidavits supporting or opposing motions for summary judgment. It does not appear to be applicable to Exhibit B, which this Court considers to be a citation of authority in connection with the defendants' arguments, rather than as factual evidence. This Court will not refuse to consider Exhibit B as an argument.

■ The plaintiffs also argue in their response to the defendants' motion that the

defendants have not shown a compelling governmental interest in "assuring that fire personnel are physically capable and possess unimpeachable integrity and judgment." They further argue that the defendants' have failed to show where a drug screen will provide knowledge required by that governmental interest.

There can be no doubt that the work of firefighters, to borrow the words of the Supreme Court in *Von Raab*, "depends uniquely on their judgment and dexterity." In fact, it does so far more than does drug interdiction and the carrying of firearms. Moreover, there is an element of teamwork in fire-fighting that is perhaps unique to that occupation. When they are at a blaze, if one member of the crew is not completely alert and capable, mentally and physically, the lives of the other members are in jeopardy.

In that connection, it must be borne in mind that, as certain reference in the Postal Service's study, and in other published writings show, the effects of illicit drugs upon physical and mental performance last for a long time, more than just a few hours, even though the user may not be conscious that he is impaired.

The real problem that must be faced and dealt with here is the impact of the right to use illegal or performance-altering substance on the right to serve the public in an occupation where proper performance is a matter of life and death, not only of the user, but of those the user serves, and of those who serve with the user.

In our present-day society, where the insistence on self-gratification at any cost has blurred almost to obliteration the line between liberty and license, it is not easy to deal with this problem. However, in the end, there is always a price that must be paid. It is neither unjust, illegal, nor unconstitutional to hold that persons who wish to use drugs, alcohol, or other performance altering substances while at work, or at other times when the residual effects of use would tend to impair functioning, should not be permitted to be firefighters. Conversely, a person who wishes to dedicate himself or herself to the diffi-

cult and dangerous work of a firefighter should not insist on indulging in certain self-gratifying practices that may impair performance. Granted that it may seem harsh that one failure of a drug test should disqualify an individual who is not a habitual drug user from being a firefighter, a firefighter who used drugs even once and came too soon thereafter to work could cause unimaginable disaster to many people.

Plaintiffs argue, considerably more cogently, that since the revised background investigation criteria only assess negative points for excessive use of alcohol or drugs that evidence material and adverse affects on employment or domestic situations, it is inconsistent to reject entirely for failure to pass a drug screen. In other words, if a person who is shown to have real problems of excessive substance abuse could still be appointed a firefighter, such a person should not be automatically rejected because of a single negative result on a drug screen.

 This Court, as stated above, takes the position that mere use of drugs or alcohol, not necessarily abuse, under the ruling laid down by the Supreme Court in *Von Raab*, *supra*, and that Court's reasoning, should disqualify persons seeking to become fire department personnel. To the extent that the background investigation criteria are inconsistent with this Court's views expressed herein, the Court does not approve them. If the background investigation reveals problems with drug or alcohol usage, the applicant should be disqualified, not just assessed negative points.

In this regard, it must be borne in mind that the EEOC guidelines and the views of the expert on the job-relatedness of selection criteria are not an end in themselves, but only a means to the end of securing fairness in employment practices. As with any other litigated matter, the ultimate decision must be made by the Court. If the parties wish to decide matters for themselves, they can always do so by the simple device of dismissing their lawsuit. However, particularly in civil rights litigation such as this matter, the public has an over-

riding interest which the courts are bound to protect, even though the parties to the litigation may be willing to compromise or sacrifice the public's interest to gain their own ends.

Although this Court has never favored any sort of prohibition, or making criminal the voluntary use of any substance, it still recognizes that some employments are so closely connected to public safety that those who wish to pursue those employments must be willing to pay for the privilege of doing so by abstaining from the use of mind-or performance-altering substances.

There is danger, of course, that a firefighter might at times have a medical need to take prescription drugs which cause the same impairment of function as do illicit drugs. That consideration cannot be overlooked in determining the issues here. However, upon a report from a physician that such medication has been prescribed, it should present no insuperable difficulties to grant some variety of medical leave or limited duties. A firefighter would have to recognize that over-the-counter medications that impair functions must not be used except when directed by a physician who can certify the use to the firefighter's superiors. Thus this consideration does not outweigh, or even balance, the other considerations set forth herein.

This Court is impelled to the conclusion that the defendants are right in their arguments on both of the points the plaintiffs' raise. The defendants' motion for a summary judgment permitting drug screening as a part of the selection process for firefighters is well taken, and must be granted.

THEREFORE, for the reasons stated herein, good cause appearing, it is

ORDERED that the motion of the plaintiffs' for a permanent injunction prohibiting the use of urinalysis drug screening as a device to evaluate applicants for firefighter trainee with the Toledo Fire Division be, and it hereby is, DENIED; and it is

FURTHER ORDERED that the motion of the defendants for summary judgment

in their favor concerning the issue of urinalysis drug screening be, and it hereby is, GRANTED, and the clerk shall enter summary judgment in favor of the defendants on this issue.

IT IS SO ORDERED.